RITZE *v.* BOARD OF CANVASSERS OF IRON COUNTY.

1. ELECTIONS—RECOUNT—PRIMARY—SEAL.

The seal being a necessary part of the equipment under the general election law (1 Comp. Laws, § 3617, 1 How. Stat. [2d Ed.] § 217), a ballot box not sealed with an official election seal may not be opened and the votes of the township recounted after primary election for the nomination of probate judge, although the slit in the box was covered with paper fastened on with sealing wax, and the keyholes of the locks were similarly protected, and the papers signed by the chairman of the election board, and although no .evidence appeared that the box had been tampered with or a fraud committed; section two of the primary law (Act No. 281, Pub. Acts 1909, § 2; 1 How. Stat. [2d Ed.] § 506) requiring primary elections to be conducted "as near as may be in every particular as prescribed by law for the regulation and conduct of general elections," requires the same safeguards against tampering with the ballots as in case of general elections.

2. SAME—EVIDENCE.

An attempt on the part of the board of canvassers to take the testimony of the primary election officials as to the condition of the box and to compare the poll list with the enrollment book, was wholly unauthorized.

Certiorari to Iron; O'Brien, J., presiding. Submitted October 16, 1912. (Calendar No. 25,387.) Decided October 23, 1912.

Mandamus by Claude C. Ritze against the board of county canvassers of Iron county to compel respondents to canvass the votes according to the returns and not to consider the result of a recount. An order issuing the writ is reviewed by respondents on writ of certiorari. Affirmed.

*Chas. H. Watson,* for appellants.

*Cook & Pelham,* for relator.

BROOKE, J. Certiorari to mandamus. Relator, one Fred H. Abbott, and three others, were candidates for the republican nomination for judge of probate of Iron county at the primary election held on August 27, 1912. After a recount by the board of county canvassers which is not here in question, it was found that relator had a plurality of 17 votes over Abbott, his nearest competitor. Abbott thereupon filed a petition with the board under section 40 of Act No. 281 of the Public Acts of 1909 (1 How. Stat. [2d Ed.] § 544), asking for a recount of the votes cast in precinct No. 1 of the township of Iron river. The statutory requirements were complied with by Abbott, and a recount of the votes cast at said primary election in said precinct was had pursuant to his petition. Relator, Ritze, and his attorney participated in said recount. By said recount it appeared that the ballot box contained 170 votes for said Ritze and 39 for Abbott, instead of 216 votes for Ritze and 47 for Abbott, as had been returned by the board of primary election inspectors of said precinct. This recount, if permitted to stand, would give Abbott a plurality of 21 votes over Ritze. Relator then filed his petition in the circuit court in which he set out facts material to the issue here presented as follows:

" (6) Your petitioner further shows: That on the 10th day of September, 1912, at 10 o'clock a. m. of said day, said board of canvassers of said county of Iron duly convened in the courthouse in the city of Crystal Falls for the purpose of holding said recount, at which time and place said Fred H. Abbott and your petitioner were present, that said board of canvassers ordered the ballot box of precint No. 1 to be brought before it and took testimony over the objections of your petitioner, bearing on the conditions of the ballot box then standing before said board of canvassers.

" (7) That said ballot box was not protected against fraud and alteration and substitution of ballots contained therein, the slit of the box being merely covered with a piece of paper fastened to the box with ordinary sealing wax, the paper bearing the signatures of the members of the primary election board of said precinct No. 1, but no

official election seal or other seal of any kind was impressed on said sealing wax, as required by law, so that said paper could easily be removed from said slit and replaced without detection or without breaking a seal.

"(8) That there was a lock on each side of said ballot box. That the keyhole of each of said locks was covered by a piece of paper bearing the signature of the chairman of the primary election board of said precinct No. 1. That said piece of paper on each of said locks was fastened thereto with sealing wax, but that no official election seal, as required by law, or any other seal, was impressed thereon. That nowhere on said ballot box was a cloth, strap, canvas, or piece of paper sealed with sealing wax thereto with the official election seal impressed thereon in such manner that such ballot box could not be opened without breaking such seal.

"(9) That after inspection of said ballot box, said board of canvassers, over the objections of your petitioner, proceeded to open said ballot box and to make a recount of the votes found therein, and announced the result as follows, to wit:"

Relator prayed for a writ of mandamus commanding the board of canvassers to canvass the vote for the candidates for the republican nomination for the office of judge of probate according to the returns of the inspectors of said primary election of said precinct No. 1, Iron River township.

The verified answer of the members of the board of canvassers contains the following:

"(6) These respondents admit the truth of the allegations contained in paragraph 6 of said petition, but, further answering said allegations, aver that the testimony taken by said board of canvassers, as alleged in said paragraph 6 of said petition, was the sworn testimony of the members of the board of primary election inspectors of said precinct No. 1, from which it appears undisputedly that the ballots in the ballot box of said precinct had not been tampered with and were in exactly the same condition as when said box was sealed up and locked by the board of primary election inspectors of said precinct at the close of the polls on said primary election day, and that the said board of canvassers carefully and closely in-

spected said ballot box before opening the same, and found that said box had not been opened or in any manner disturbed since the same was locked by said board of primary election inspectors.

"(7) These respondents, in answer to paragraph 7 of relator's petition, allege that said ballot box was in fact protected against fraud and alteration and substitution of ballots contained therein; that the slit of the box was securely covered with a piece of strong heavy paper, securely fastened to said box with sealing wax; that upon said paper was written in ink the signatures of the members of the board of primary election inspectors of said precinct No. 1; and that said paper could not be removed from said slit and replaced without detection or without breaking the seals thereon, but admit that no seal was impressed upon the said sealing wax, and allege that no election seal or primary election seal or seal of any kind was furnished to the said board of primary election inspectors, and respondents are informed and believe that no such seal has ever been provided for said precinct No. 1.

"(8) These respondents, in answer to paragraph 8 of relator's petition herein, admit that there was a lock on each side of said ballot box, and that the keyhole of each of said locks was covered by a piece of paper bearing the signature of the chairman of said board of primary election inspectors of said precinct No. 1, and allege that said locks were fastened in such a manner that said box could not be opened without unlocking each of said locks. These respondents admit that there was a strong piece of paper on each of said locks, securely fastened thereto with sealing wax, and that no election seal or any other seal was impressed upon said sealing wax, but allege that said paper was sealed with sealing wax upon each of said locks in such a manner that said locks could not be unlocked without either breaking or removing said paper, and that said paper was sealed on each side of said locks in such a manner that the same could not be removed without detection and without breaking the seals on said locks, and that said paper on each of said locks had not been broken or removed at the time said board of county canvassers opened said ballot box for the purpose of recounting the ballots therein. These respondents further admit that there was no official election seal impressed upon any sealing wax upon said ballot box, but allege that the sealing wax was so placed upon said ballot box that said ballot

box could not be opened without detection or without breaking said seal.

"(12) These respondents further say that at the session of said board of county canvassers held on the 18th day of September, 1912, they compared the poll list used in said precinct No. 1 at said primary election with the enrollment book, and found thereby that more than 150 persons voted at said primary election who were not enrolled in said enrollment book, and that all of the votes cast in said precinct at said primary election were republican votes, excepting less than 50, to wit, 48."

The court below having issued the writ as prayed, respondents have brought the case here for review.

The applicable provisions of the "Primary Election Law," so called (Act No. 281, Pub. Acts 1909, 1 How. Stat. [2d Ed.] § 505 *et seq.*), are as follows:

"Sec. 2. All primary elections shall, except as herein otherwise provided, be conducted and regulated as near as may be in every particular as prescribed by law for the regulation and conduct of general elections. The provisions of the general election law shall apply to primary elections with respect to the giving of notices of enrollment and election, in fixing places for holding such elections, providing the ballot boxes with the necessary equipment and supplies, and all officers required to perform similar duties under the general election law shall be required to perform such duties under this act, with like power and compensation."

"Sec. 36. After the closing of the polls on the day of holding any primary election, the ballots shall be counted as provided by law for the counting of the ballots of any regular election.

"Sec. 37. After the votes at any primary election in any election precinct shall have been counted, the officials * * * shall return all the ballots voted to the ballot boxes, and all books, unused ballots, supplies, lists and subscribed oaths shall be safeguarded and returned, as near as may be, in the manner provided for by law governing general elections.

"Sec. 38. The returns of said primary election shall be canvassed and the results declared in the same manner and within the same time after the primary election and by the same officers as is provided by the general law for

canvassing the returns and declaring the result in city, county, district and State elections."

"SEC. 40.  *  *  *  When the recount of each box is completed, the said board shall at once return the ballots thereto, carefully lock and seal the same in the manner provided by law for the locking and sealing of ballot boxes, and deliver the ballot boxes to the officer having the care and custody thereof."

The general election law (section 3617, 1 Comp. Laws, 1 How. Stat. [2d Ed.] § 217) provides: .

"There shall be provided and kept by the township clerk in each township, at the expense of such township, and in each ward or voting precinct of any city, by the city clerk or recorded at the expense of the city, one or more suitable ballot boxes, with lock and key, which ballot box shall have an opening through the lid of the proper size to admit a single closed ballot, through which each ballot received shall be passed into the box.   He shall also furnish a township or ward election seal, which shall contain the name of the township or ward and the words 'election seal' around the margin thereof, and such other words or device thereon as the township board of the township or common council of the city may prescribe."

Section 3647:

"SEC. 37. After the ballots are counted they shall, together with one tally sheet, be placed in the ballot box which shall be securely sealed in such a manner that it cannot be opened without breaking such seal.   The ballot box shall then be placed in charge of the township or city clerk but the keys of said ballot box shall be held by the chairman of the board, and the election seal in the hands of one of the other inspectors of election."

The only question for determination is whether the ballot box in question, sealed in the manner indicated by the petition, should have been recounted.   If the provisions of the general election law as to sealing are applicable in a primary election, it is manifest that the board of canvassers should have refused to recount the box in question because confessedly it was not sealed in accordance with the provisions of that law.   Under the general election law, a recount can be made only when the canvassing

board can determine from an inspection of the box that it has been sealed as the statute requires. *Keith* v. *Wendt*, 144 Mich. 49 (107 N. W. 443); *Ward* v. *Culver*, 144 Mich. 57 (107 N. W. 444).

It is contended on behalf of respondents that the words, "as near as may be," used in sections 2 and 37 of the primary election act, indicate that it was not intended by the legislature to compel an exact following of the general election law in every particular, and that considering the situation and circumstances, no seal having been furnished the precinct election inspectors, they, in sealing the box in the manner indicated, complied with the general law "as near as may be." We are unable to agree with this contention. Section 2 of the primary election act provides that the provision of the general election law shall apply with respect to "providing the ballot boxes with the necessary equipment and supplies." We think it must be held that the seal is one of the most important items of such "necessary equipment." Aside from this consideration, it is apparent from a perusal of the entire act that it was the legislative intent to surround the primary election with the same safeguards provided for a general election. The use of the words, "as near as may be," may be supposed to refer to provisions of the general law which cannot for any reason be made applicable to a primary election. The sealing and safeguarding of the ballot boxes is certainly not such a provision.

The board of canvassers took the testimony of the primary election inspectors, with reference to the condition of the box. They likewise compared the poll list used in said precinct with the enrollment book. They had no authority to do either. *Bradley* v. *Board of State Canvassers*, 154 Mich. 274 (117 N. W. 649); Act No. 281, § 40, Pub. Acts 1909 (1 How. Stat. [2d Ed.] § 544).

The writ of certiorari will be quashed.

Moore, C. J., and Steere, McAlvay, Kuhn, Stone, Ostrander, and Bird, JJ., concurred.